## Chicago & Alton R. R. Co. v. Fred Goltz.

1. RAILROADS—*An Injury to a Servant Held to Have Resulted from a Risk Incident to the Business.*—In a suit against a railroad by a member of a section gang for injuries occasioned by the alleged negligence of the company, the court finds as a matter of fact that plaintiff was injured as a result of one of the risks ordinarily incident to the business in which he was engaged, and without fault or negligence on the part of the railroad company or its servants.

2. FELLOW-SERVANTS—*Foreman and Members of a Section Gang of a Railroad.*—The members of a section gang of a railroad and their foreman are fellow-servants within the rule exempting the common master from liability for injuries to one in consequence of negligence on the part of the other.

3. DAMAGES—*$5,000 Held Excessive.*—In a suit against a railroad by a member of a section gang for an injury resulting in a serious shortening and stiffening of the right limb, very materially interfering with, if not preventing entirely, the performance of manual labor, the court thinks an allowance of $5,000 damages is excessive.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1897. Reversed with finding of facts. Opinion filed September 20, 1897.

GEORGE S. HOUSE, attorney for appellant.

It has become well settled that the master may conduct his business or any particular branch of his business in his

own way, although another method be less hazardous; and the servant takes the risk of the more hazardous method if he know the dangers attending the business in the manner in which it is carried on.    Hence, if the servant, knowing the hazards of his employment as the business is conducted, is injured while employed in such business, he can not maintain an action against his employer because he may be able to show there was a safer mode in which the business might have been carried on, and that had it been carried on and conducted in such manner, he would not have been injured. Naylor v. Chicago & N. W. Ry. Co., 53 Wis. 661; Stephenson v. Duncan, 73 Wis. 406.

When a servant consents to occupy the place prepared for him, and incur the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to enable him to comprehend them, it is not a question whether such place might, with reasonable care and by reasonable expense, have been made safe.    Sullivan v. India Mfg. Co., 113 Mass. 396; Green v. Cross, 79 Tex. 130; O'Neal v. Chicago and I. C. Ry. Co., 132 Ind. 110; Chicago, B. & Q. R. R. Co. v. Merckes, 36 Ill. App. 195; United S. Rolling Stock Co. v. Chadwick, 35 Ill. App. 474; Weigreffe v. Daw, 40 Ill. App. 53.

E. MEERS and J. W. DOWNEY, attorneys for appellee.

A master is liable to a servant when he orders the latter to perform a dangerous work, unless the danger is so imminent that no man of ordinary prudence would incur it. Even if the servant has some knowledge of the attendant danger, his right of recovery will not be defeated if, in obeying the order, he acts with a degree of prudence which an ordinarily prudent man would exercise under the circumstances.    When the master orders the servant to perform his work, the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils; the servant has the right to rest upon the assurance that there is no danger which is implied by such an order.    The master and servant are not altogether upon a footing of equality.    The primary duty of

the latter is obedience, and he can not be charged with negligence in obeying an order of the master, unless he acts recklessly in so obeying. Whether he acts thus recklessly, or whether he acts as a reasonably prudent person should act, are questions of fact to be determined by the jury. Illinois Steel Co. v. Schymanowski, 162 Ill. 460; Chicago Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573; Keegan v. Kavanaugh, 62 Mo. 230; Ferren v. Old Colony R. R. Co., 143 Mass. 197; Lee v. Woolsey, 109 Pa. St. 124; Kranz v. Long Island Ry. Co., 123 N. Y. 1.

The master is liable for an injury to a servant resulting from the orders of a superintendent, or other employe or agent having the supervision of the work, and power to employ, direct and discharge the laborers. Lalor v. Chicago, Burlington & Q. R. R. Co., 52 Ill. 401; Gormly v. Vulcan Iron Works, 61 Mo. 492.

Negligence by a representative of the master, arising in the form of improper orders and directions given about the work, and in the control of operatives, will render the masters liable. Chicago, B. & Q. R. R. Co. v. McLallen, 84 Ill. 116; Dowling v. Allen, 74 Mo. 13; Berea Stone Co. v. Kraft, 31 Ohio St. 287; Thompson on Negligence, 975, 1028 and 1031; Cooley on Torts, 562.

The question whether servants are in the same line of employment is properly left to the jury. Toledo, W. & W Ry. Co. v. Moore, Adm'x, 77 Ill. 217.

An employe of a railway company having the charge and control of a crew or gang of men engaged in any particular service, who are bound to obey his orders, is not a fellow-servant with such persons, in the same line of employment, within the meaning of the rule that prevents a recovery by a servant of his master, for the negligence of a fellow-servant, and the commands of such employe, within the scope of his authority, are to be regarded as those of the master. Wabash, St. L. & P. Ry. Co. v. Hawk, 121 Ill. 259.

When a railway company confers authority upon one of its employes to take charge and control of a gang of men in car-

rying on some particular branch of its business, such employe, in governing and directing the movements of the men under his charge with respect to that branch of its business, is the direct representative of the company itself, and all commands given by him within the scope of his authority are, in law, the commands of the company.  *  *  *  In exercising this power he does not stand upon the same plane with those under his control.  His position is one of superiority.  When he gives an order within the scope of his authority, those under his charge are bound to obey, at the peril of losing their situation, and such commands are, in contemplation of law, the commands of the company, and hence, it is held responsible for the consequences.  These views are in strict accord with all that is said in the Moranda case.  *  *  *  The governing servant is not the fellow-servant of those under his charge with respect to the exercise of such powers.  Chicago & A. R. R. Co. v. May, Adm'x, 108 Ill. 288.

The amount of damages to be awarded in actions to recover for personal injuries, caused by another's negligence, is a matter peculiarly within the province of the jury. Town of Wheaton v. Hadley, 30 Ill. App. 564.

There is no fixed standard by which damages can be measured in such cases.  And when a jury, without passion or prejudice, have defined the amount, it should not be disturbed, unless so high as to strike a court at first blush as unreasonable.  Chicago & A. R. R. Co. v. Kelly, 28 Ill. App. 655.

Recovery is for pain and anguish suffered and to be suffered, all damages to person, apparent or otherwise, loss of time, reasonable expenses in being cured, and generally all damages alleged in the declaration, and believed from the evidence to be sustained.  Village of Sheridan v. Hibbard, 119 Ill. 307; Hannibal & St. J. R. R. Co. v. Martin, 111 Id. 232.

In assessing damages, all the facts, etc., in evidence should be considered; the nature and extent of the injuries; pain and suffering resulting; permanent injury caused, if any;

expense of healing or curing; future pain and suffering, or inability to labor, etc.   Fisher v. Jansen, 128 Ill. 551. .

A verdict of $6,565 for injuries, permanently and completely disabling and leaving in a condition of suffering, a woman forty-four years of age, who previously did all her house work, is not excessive.   Miller v. Boone County, 63 N. W. (Iowa) 352.

A man aged fifty-four years was negligently hurt so that he was confined to his house for six weeks, had three ribs broken and was lamed probably for life—$5,000 held not to· be excessive.   Quinn v. Long Island R. R. Co., 34 Hun (N. Y.) 331.

Injuries to a servant through obedience to the order of his superior, producing total blindness.   Damages $9,000; not excessive.   Stearns v. Reidy, 33 Ill. App. 246.

Conductor of a mixed passenger and freight train and acting brakeman; age forty-five years; injuries, foot crushed, resulting in amputation; other permanent injuries.· Damages $14,000; not excessive.   Joliet N. & A. Ry. Co. v. Velie, 36 Ill. App. 458.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action on the case to recover damages for injuries incurred by appellee, while in the employment of appellant as a section hand in a gang of section men, of which one James Buckley was foreman.

The case was tried by a jury, who returned a verdict in favor of appellee for $7,000.   The court required a remittitur of $2,000, which, being entered, a motion for a new trial was overruled and judgment entered in favor of appellee for $5,000.

At·the time of the accident which caused appellee's injury, · he had been working for appellant 'as a member of this section gang, under charge of the foreman Buckley, for about three weeks.   He had previously worked in a similar capacity on the C., R. I. & P. R. R. for one summer, and had also been engaged, on a former occasion, in like employment

with appellent, for a period of about two months. It appears, therefore, that when appellee applied to Buckley for employment, some three weeks before his injury, and was then engaged, he was not unfamiliar with the nature of the service, the duties that would be required of him, or the risks naturally and necessarily incident to the business he was entering upon.

The section upon which he was employed under charge of Buckley, extended south from Fifth avenue, in the city of Joliet, for about seven miles, along that portion of appellant's railroad known as the "Coal City Branch." It was the duty of the foreman and his gang to go over this section each day, to see that the track was kept in proper repair, and this was accomplished by means of a hand-car propelled by the men of the gang, under Buckley's direction, he going out with them in the morning and staying with them all day while at their work. In passing over the road it was the duty of all the members of the gang to maintain a sharp lookout for trains and keep the hand-car out of the way, so that neither such trains nor themselves should be endangered by a collision. If a train was seen approaching, the men set the hand-car off the track until the train had passed by, then set their hand-car back upon the track and proceeded upon their way. Running upon appellant's railroad at the time of the accident was a fast train, known as the "Chicago and Kansas City Limited," but familiarly called by the men "The Hummer," and which was a regular passenger train running every day upon schedule time, arriving at Joliet at 8:15 A. M.

Leaving Joliet upon their hand-car about seven o'clock in the morning, the section men usually met this train at "Judge's Cut," unless they had work to do between that point and Joliet, when they might meet it at any place on the road where they happened to be. In the vicinity of Judge's Cut, the Atchison, Topeka & Santa Fe Railroad runs near to, and parallel with, the railroad tracks of appellant. On the morning of the accident, June 25, 1895, the members of this section gang met at about seven o'clock, got out their

hand-car and proceeded to their work, running southerly along the track, keeping a lookout for the "Hummer," all facing in the direction in which they were going while working the levers to run the car, until Judge's Cut was reached, when the hand-car was stopped and all listened for the train, but not hearing it and finding it to be overdue, the foreman remarked that the train was late. One of the men, Derrig, said : "We could make the next siding before the train comes ;" and another said, · "Oh, I guess we can make the next set off." All this was said in the hearing of appellee, and apparently without any particular orders to do so, the men commenced working the levers again and moving the car forward, but they had not proceeded very far when a train was seen approaching. For a moment there seems to have been a discussion among the men, as to whether the on-coming train was upon the Santa Fe tracks or upon the one on which the gang were traveling with the hand-car, but as soon as it was discovered that it was on the last named track, the foreman gave orders to get the hand-car off the track. Several of the men swear they did not hear the order, but every member of the gang, including the foreman, at once seized hold of the hand-car and endeavored to remove it from the track and out of the way of the approaching train. In this they were unsuccessful, and seeing that the train was close upon them and that they were in great danger, the foreman called out to the men to get out of the way. This they all did in safety except appellee, who was struck in some manner by a tool or portion of the hand-car thrown therefrom when the train collided with it. Just how the injury occurred does not clearly appear, but after the train had passed by, appellee was found lying on the bank of the roadway, fifteen or twenty feet from the east rail of the track with his leg broken. He was removed to a hospital, but the result of the injury is a serious shortening and stiffening of the right limb, very materially interfering with, if not preventing entirely, his performance of manual labor.

Unfortunate as this result is to appellee, we think, upon

C. & A. R. R. Co. v. Goltz.

the facts appearing in the record, he has not established a cause of action against appellant. We fail to find in the evidence any proof of negligence on the part of the section foreman, or any evidence that under the circumstances of the case he gave any improper order. As the result proved it would have been safer for the foreman to have kept his hand car and gang of hands in Judge's Cut for a few minutes longer, and until the train had passed, but he could not foresee the consequences, and was only bound, under the circumstances, to exercise that decree of care and prudence, which ordinarily careful and prudent men would be expected to use under like surroundings. Who can say that an ordinarily careful and prudent section foreman, failing to meet a train at the place where he had a right to expect it, and finding it behind time, would not have done as this man did, and proceed on his way carefully and cautiously, looking out for the train, as the evidence shows they did do, and as soon as it came in sight try to get the hand car out of the way? Common observation has taught us all that when a train is once behind time, it is the merest guess work as to when it will come, except that at the stations some message may be received as to how much it is behind time. This section foreman had no means of knowing whether the train would come in five minutes or half an hour. The question of getting to the next turn out, was a matter of discussion among the men, and the general opinion seemed to be that they could do so safely. The result showed they were mistaken, but it does not necessarily prove they were careless or reckless in endeavoring to do so. No doubt their experience had shown them that they could do with safety what they attempted to do on this occasion and failed in accomplishing; but they had done similar things many times before and supposed they could do so again without unusual risk. The very business in which these section men are engaged, passing daily over their portion of the road, with the liability always about them to encounter trains; the necessity of doing their work and performing their duty in spite of the trains, shows that they

are unavoidably placed in positions of danger and peril, from which accidents frequently occur even under the most careful management. In this case we think the accident was a consequence of one of the risks ordinarily incident to appellee's employment. When he sought the employment he knew the manner in which the business was conducted and the risks he would encounter, and he must be presumed to have contracted in reference thereto. We do not think appellee's injury was attributable to any improper order given by the section foreman. Even if it were conceded that he gave the order to go forward after stopping in Judge's Cut to listen for the train, we can not say it was negligence on his part to do so, because we can not see that any ordinarily prudent person under like circumstances would not have done the same thing.

It certainly can not be said, that giving the order to get the hand-car off the track, when the train was discovered to be approaching, was an improper or negligent act. Had he made no effort to avoid a collision between the train load of human freight and the hand-car, he would certainly have been guilty of most culpable negligence. We fail to see what more, or less, any prudent man could have done under the same circumstances, than this foreman did to protect his men, or secure the safety of the passenger train. Our conclusion is, that the charge of negligence against appellant is not sustained by the evidence.

We are further of the opinion that in the business and enterprise in which appellee and the section foreman were engaged at the time of the accident, they were fellow-servants within the rule exempting the common master from liability for injuries to one, in consequence of negligence on the part of the other, and therefore that appellant was not liable in this case, even if the section foreman was negligent. We do not deem it necessary to go into an extended discussion of our reasons for this opinion, but content ourselves with simply expressing it.

We think that the damages were excessive even after the remittitur was entered, but as we are of the opinion that

appellee has shown no right of recovery, we need not discuss that question further.   At the close of all the evidence in the case, appellant asked an instruction directing the jury to find the defendant not guilty.   This instruction the court refused to give, and in this we think the court erred, for the reasons we have already given.

It follows that the judgment must be reversed.

DIBELL, J., took no part.

FINDING OF FACTS TO BE MADE A PART OF THE JUDGMENT.

We find, as a question of fact, that the injury to appellee was not received in consequence of any negligence of appellant, nor of the section foreman, James Buckley.   That in what he did and said in control of his gang and hand-car at the time of the accident and prior thereto from the time of leaving Judge's Cut, and in leaving the last named place, as shown by the evidence, the said James Buckley acted with due care and caution, and did not give any improper, careless or negligent orders.

We further find as a question of fact that appellee was injured as a result of one of the risks ordinarily incident to the business in which he was engaged, and without fault or negligence on the part of appellant or its representatives or servants.